**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HOLLY WEINSTEIN, PEGGY RODRIGUEZ, ANDREA DIMARIO, and CRYSTAL YOUNGER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> REXALL SUNDOWN, INC., NATURESMART, LLC, and THE BOUNTIFUL COMPANY f/k/a THE NATURE'S BOUNTY CO., <br><br> Defendants. | Case No.   21-cv-5378 <br><br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiffs Holly Weinstein, Peggy Rodriguez, Andrea DiMario, and Crystal Younger ("Plaintiffs"), by their attorneys, bring this action individually and on behalf of themselves and all others similarly situated (the "Class"), against Defendants Rexall Sundown, Inc., NatureSmart, LLC, and The Bountiful Company f/k/a The Nature's Bounty Co., and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities (hereinafter referred to as "Defendants" or "Sundown").  Plaintiffs make the following allegations upon information and belief (except those allegations as to the Plaintiffs of their attorneys, which are based on personal knowledge), based upon an investigation of counsel, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

I.    **INTRODUCTION**

1.    This is a consumer protection and false advertising class action.  Defendants market, advertise, and distribute various multivitamins under the "Sundown Kids" brand name,

which it prominently advertises as "Complete Multivitamin Gummies" containing "B Vitamins." The multivitamin products at issue include the following labels:

      a.      Disney and Pixar Incredibles 2 Multivitamin Gummies;

      b.      Disney and Pixar Toy Story 4 Complete Multivitamin Gummies;

      c.      Disney Frozen 2 Complete Multivitamin Gummies;

      d.      Disney Princess Complete Multivitamin Gummies;

      e.      Marvel's Avengers Complete Multivitamin Gummies;

      f.      Marvel's Spider-Man Complete Multivitamin Gummies; and

      g.      Star Wars Complete.

The multivitamin products may also include other multivitamin gummies that depict other film and comic book characters, but that have the same label representations and the same product formulation.  Collectively, these multivitamins are referred to herein as the "Products."

2.      At all relevant times, Defendants have formulated, manufactured, labeled, marketed, and sold the Products as "Complete Multivitamin Gummies," containing the "B Vitamins" (without any qualifying or restrictive language), and as containing "13 Essential Nutrients."

3.      The representations "Complete Multivitamin Gummies," "B Vitamins," and "13 Essential Nutrients" appear on the labels of the Products.

4.      The twin representations of "Complete" along with the unqualified "B Vitamins" lead reasonable consumers to believe that the Products contain all B vitamins uniformly recognized by the Food and Drug Administration ("FDA") and the National Institute of Health ("NIH").[1]

---

[1]      Both the FDA and NIH recognize eight B vitamins — Vitamin B1 (thiamine), Vitamin B2 (riboflavin), Vitamin B3 (niacin), Vitamin B5 (panthothenic acid), Vitamin B6, Vitamin B7 (biotin), Vitamin B9 (folate), and Vitamin B12.

5.      Unbeknownst to consumers, the Products labeled as "Complete" and containing the "B Vitamins" do not contain Vitamin B1 (thiamine), Vitamin B2 (riboflavin), and Vitamin B3 (niacin) (collectively referred to as the "Missing B Vitamins").

6.      As such, the Products fail to conform with a statement of quality made in Defendants' labeling as the Products are not "Complete Multivitamin Gummies" containing the "B Vitamins," as represented by Defendants.

7.      Moreover, the labels of the Products are deceptive and misleading.

8.      Indeed, Defendants modified and changed the misleading labels of the Products in (upon information and belief) calendar year 2020, adding a diamond-shaped symbol next to the word "Complete" on the front label of the Products.  The diamond-shaped symbol refers consumers to a part of the rear label of the Products where the symbol is repeated, and where the representation that used to simply say "B Vitamins" has been modified to read "select B Vitamins."

9.      However, while Defendants now sell some of the Products with the modified labels containing the qualified "select B Vitamins" representation, Defendants also continue to market and sell the Products with the misleading and deceptive labels.  As of April 2021, depictions of the Products with the deceptive and misleading labels still appear on the Sundown Nutrition website,[2] as well as on major online retailers such as Amazon.[3]

10.     Moreover, both the FDA and NIH recognize 13 vitamins in total:  Vitamins A, C, D, E, K, B1, B2, B3, B5 (pantothenic acid), B6, B7 (biotin), B9 (folate), and B12.

---

[2]      *See, e.g.*,  https://www.sundownnutrition.com/products/disney-princess-complete-multivitamin-gummies/ (last visited April 7, 2021) (front label without the diamond symbol next to the word "Complete").

[3]      *See, e.g.*,  https://www.amazon.com/Sundown-Naturals-Kids-Complete-Multivitamin/dp/B06W9FYXD5/ ref=sr_1_10?dchild=1&keywords=sundown+kids+multivitamin+gummy&qid=1617823750&s=hpc&sr=1-10   (last visited April 7, 2021) (front and rear label of the Products showing "Complete" without any diamond symbol, "B Vitamins" without any qualifying language, and "13 Essential Nutrients.").

11.     The Products do not contain all 13 of these vitamins, in that they do not contain vitamins B1, B2, or B3.

12.     Defendants' representation of "13 Essential Nutrients" is therefore deceptive and misleading, as it reinforces the belief of reasonable consumers like Plaintiffs that the Products contain all the B Vitamins when they do not.

13.     Plaintiffs and other consumers purchased the Products, reasonably relying on Defendants' deceptive representation about the Products, believing that the Products were Complete Multivitamin Gummies, believing that the Products contained all the B vitamins, and believing that the Products contained the 13 vitamins recognized by entities such as the FDA and NIH.  Had Plaintiffs and other consumers known that the Products did not contain the Missing B Vitamins they would not have purchased the Products or would have paid significantly less for the Products.   Therefore, Plaintiffs and consumers have suffered injury in fact as a result of Defendants' deceptive practices.

14.     Plaintiffs seek to represent a nationwide class of consumers, a Rhode Island consumer Subclass, an Indiana consumer Subclass, a Massachusetts consumer Subclass, a Maryland consumer Subclass, and a Consumer Protection Multi-State Subclass (collectively referred to as "Classes").

15.     Plaintiffs, on behalf of themselves and other consumers, seek damages, restitution, declaratory and injunctive relief, and all other remedies the court deems appropriate.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiffs, as well as most

members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of Defendants.

17.     This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in New York or otherwise intentionally did avail themselves of the markets within New York, through their sale of the Products in New York and to New York consumers.  Defendants are also headquartered in Ronkonkoma, New York, and Bohemia, New York, and are thus amenable to general jurisdiction in this judicial district.

18.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

**PARTIES**

19.     Plaintiff Holly Weinstein is a citizen of Rhode Island, residing in Kent County.  On May 18, 2020, Ms. Weinstein purchased the Sundown Kids Disney Frozen 2 Complete Multivitamin Gummies for $5.99 from Amazon.com Services LLC.  On December 27, 2020, Ms. Weinstein purchased two bottles of the Sundown Kids Sundown Naturals Kids Pixar Two Story 4 Complete Multivitamin Gummies for $7.49 each from Amazon.com Services LLC.  Ms. Weinstein made these purchases from her home in Rhode Island.  Ms. Weinstein purchased the Products, reasonably relying on the Defendants' "Complete" representation on the Products and believing that the Products contained all the B vitamins, including vitamins B1, B2, and B3.  Ms. Weinstein would not have purchased the Product or would have paid significantly less for the Products had she known that the Products did not contain the Missing B Vitamins.  Ms. Weinstein therefore suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and fraudulent practices, as described herein.

20.     Plaintiff Peggy Rodriguez is a citizen of Indiana, residing in Johnson County.  On March 13, 2020, Ms. Rodriguez purchased a bottle of Sundown Kids Sundown Naturals Disney

Princess Complete Multivitamin Gummies for $14.99 from the Kroger grocery store and pharmacy located at 3100 Meridian Park Drive, Greenwood, Indiana.  Ms. Rodriguez purchased the Product, reasonably relying on the Defendants' "Complete" representation on the Products and believing that the Product contained all the B vitamins, including vitamins B1, B2, and B3.  Ms. Rodriguez would not have purchased the Product or would have paid significantly less for the Product had she known that the Product did not contain the Missing B Vitamins.  Ms. Rodriguez therefore suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and fraudulent practices, as described herein.

21.     Plaintiff Andrea Dimario is a citizen of Massachusetts, residing in Essex County. In late 2020, Ms. Dimario purchased a bottle of Sundown Kids Incredibles 2 Complete Multivitamin Gummies bearing lot number 507880-01 and an expiration date of 10/21 from a CVS or Target store near her home in Massachusetts.  Ms. Dimario purchased the Product, reasonably relying on the Defendants' "Complete" representation on the Products and believing that the Product contained all the B vitamins, including vitamins B1, B2, and B3.  Ms. Dimario would not have purchased the Product or would have paid significantly less for the Product had she known that the Product did not contain the Missing B Vitamins.  Ms. Dimario therefore suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and fraudulent practices, as described herein.

22.     Plaintiff Crystal Younger is a citizen of Maryland, residing in Charles County.  On February 3, 2021, Ms. Younger purchased a bottle of Sundown Kids Star Wars Complete Multivitamin Gummies for $12.39 from Amazon.com Services LLC.  Ms. Younger made this purchase from her home in Maryland.  Ms. Younger purchased the Product, reasonably relying on the Defendants' "Complete" representation on the Products and believing that the Product

contained all the B vitamins, including vitamins B1, B2, and B3.  Ms. Younger would not have purchased the Product or would have paid significantly less for the Product had she known that the Product did not contain the Missing B Vitamins.  Ms. Younger therefore suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and fraudulent practices, as described herein.

23.     Defendant Rexall Sundown, Inc. ("Rexall") is incorporated in Florida, with its principal place of business at 110 Orville Drive Northwest in Bohemia, New York.  Rexall is a wholly-owned subsidiary of The Bountiful Company.  Defendant Rexall operates in New York, and directly and/or through its agents, formulates, manufactures, labels, markets, distributes, and sells the Products nationwide, including in New York.  Defendant Rexall has maintained substantial distribution and sales in this District.

24.     Defendant NatureSmart, LLC ("NatureSmart") is a Colorado LLC with its principal place of business in Bohemia, New York.  Defendant NatureSmart directly and/or through its agents, formulates, manufactures, labels, markets, distributes, and sells the Products nationwide, including in New York.  Defendant NatureSmart has and will continue to market and sell a substantial number of Products in this District.

25.     Defendant The Bountiful Company fka The Nature's Bounty Co. ("Bountiful") is incorporated in Delaware, with its principal place of business in 2100 Smithtown Ave. in Ronkonkoma, New York.  Defendant Bountiful operates in New York, and directly and/or through its agents, formulates, manufactures, labels, markets, distributes, and sells the Products nationwide, including in New York.  Defendant Bountiful has maintained substantial distribution and sales in this District.

## FACTUAL ALLEGATIONS

26.     The U.S. Department of Health & Human Services, the FDA, the NIH, and the National Institute on Aging all agree that "[t]here are 13 essential vitamins — vitamins A, C, D, E, K, and the B vitamins (thiamine, riboflavin, niacin, pantothenic acid, biotin, B6, B12, and folate)."[4]

27.     Vitamin B1 (thiamin) plays an important role in energy metabolism and the growth, development, and function of the cells in the human body.[5]  Vitamin B1 is important for muscle function and plays a crucial role in the maintenance of a healthy nervous system.[6]

28.     Vitamin B2 (riboflavin) is an essential component of coenzymes that "play major roles in energy Production; cellular function, growth, and development; and metabolism of fats, drugs, and steroids."[7]

29.     Vitamin B3 (niacin) "helps turn the food you eat into the energy you need.  Niacin is important for the development and function of the cells in your body."[8]

30.     At all relevant times, Defendants directly and/or through their agents, have formulated, manufactured, labeled, marketed, distributed, and sold the Products across New York and the United States.  The Products are sold in store and/or online at various retailers and pharmacies including, but not limited to Amazon.com, Kroger, Walgreens, CVS, Walmart, and Target.

---

[4]     https://www.nia.nih.gov/health/vitamins-and-minerals-older-adults (last accessed June 24, 2021).

[5]     https://ods.od.nih.gov/factsheets/Thiamin-HealthProfessional/ (last accessed June 24, 2021).

[6]     https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6930825/ (last accessed June 24, 2021).

[7]     https://ods.od.nih.gov/factsheets/Riboflavin-HealthProfessional/ (last accessed June 24, 2021).

[8]     https://ods.od.nih.gov/factsheets/Niacin-Consumer/ (last accessed June 24, 2021).

31.     As shown below, Defendants conspicuously represent (in all capital letters in a larger font size) on the front of the Products' bottle label that each of the Products are "Complete" multivitamin gummies (the "Complete" representation):



32.     The Products' labels also state that the Products contain the "B Vitamins" (without any qualifying or restrictive language), and as containing "13 Essential Nutrients," as shown below:



33.     By representing that each of the Products are "Complete" multivitamin gummies, Defendants warrant to consumers of the Products that the Products contain all the B vitamins uniformly recognized as essential by the FDA and NIH, including vitamins B1, B2, and B3.

34.     The twin representations of "Complete" along with the unqualified "B Vitamins" lead reasonable consumers to believe that the Products contain all the B vitamins uniformly recognized by the FDA and NIH as essential, including vitamins B1, B2, and B3.

35.     In addition, the additional representation on the Products' labels of "13 Essential Nutrients" reinforces the belief of reasonable consumers like Plaintiffs that the products contain

all the B vitamins (including vitamins B1, B2, and B3), as these B vitamins are among the 13 vitamins recognized by the FDA and NIH as "essential."

36.     However, unbeknownst to Plaintiffs and other consumers, the Products uniformly do not contain Vitamin B1 (thiamin), Vitamin B2 (riboflavin), or Vitamin B3 (niacin), as shown on the exemplar Product ingredient label above.

37.     Defendants knew or should have known that the Products do not contain the Missing B Vitamins because Defendants and/or their agents formulated and manufactured the Products.

38.     Defendants knew or should have known that Plaintiffs and other consumers, in purchasing the Products, would rely on Defendants' representations about the Products (including the "Complete," "B Vitamins," and "13 Essential Nutrients" representations) and would therefore reasonably believe that the Products contain vitamins B1, B2, and B3.

39.     Defendants modified and changed the labels of the Products in (upon information and belief) calendar year 2020, adding a diamond-shaped symbol next to the word "Complete" on the front label of the Products, as shown below:



40.     The diamond-shaped symbol refers consumers to a part of the rear label of the Products where the symbol is repeated, and where the representation that previously stated "B Vitamins" (without any qualification or restricting language) has been modified to read "select B Vitamins," as shown below:

41. Defendants also changed the phrase "13 Essential Nutrients" to "13 Key Nutrients," as shown above.

42. Defendants' changes to the Products' labels described above establish that Defendants knew that the Products' labels containing the "Complete," "B Vitamins," and "13 Essential Nutrients" representations were deceptive and misleading.

43. Prior to each purchase, Plaintiffs viewed the labels on Defendants' Products, including the representations that they are "Complete" multivitamin gummies and contained "B Vitamins" and "13 Essential Nutrients."

44. In reasonable reliance on Defendants' "Complete" multivitamin and "B Vitamins" representations on the Products, and believing that the Products contained vitamins B1, B2, and B3, Plaintiffs and other consumers purchased the Products.

13

45.     In particular, Plaintiffs purchased the Products believing they were "Complete" multivitamin gummies that contained vitamins B1, B2, and B3.

46.     Defendants' labeling claims were a material factor in Plaintiffs' decision to purchase Defendants' Products.

47.     At the point of sale, Plaintiffs and other consumers did not know, and had no reason to know, that the Products do not contain vitamins B1, B2, and B3.  Plaintiffs and other reasonable consumers are not expected to look beyond the representations on the front panel of the Products to confirm or refute those representations.  Further, Plaintiffs are not experts in nutrition and dietary supplements and did not understand whether the list of vitamins on the Supplement Facts panel of the Products contained all B vitamins or not.

48.     Plaintiffs later learned that the Products did not contain Vitamins B1, B2, or B3, and that they were not "Complete" multivitamin gummies.  Plaintiffs were deceived as a result of Defendants' false and misleading marketing practices.  Plaintiffs believed that they were buying a product that was a "Complete" multivitamin gummy containing Vitamins B1, B2, and B3.

49.     Because the Products do not contain the Missing B Vitamins, as reasonably expected by Plaintiffs and other consumers, Defendants' uniform practice regarding the marketing and sale of the Products was and continues to be misleading and deceptive.

50.     Each consumer has been exposed to the same or substantially similar deceptive practice, as at all relevant times: (1) Defendants uniformly represented on each of the Products that they were each a "Complete" multivitamin gummy; (2) that they contained "B Vitamins" (without any qualification or restricting language); and (3) each of the Products did not contain vitamins B1, B2, and B3.

51.     Plaintiffs and other consumers have paid an unlawful premium for the Products. Plaintiffs and other consumers would not have paid any price premium, and would have paid significantly less for the Products, had they known that they do not contain vitamins B1, B2, and B3.  In the alternative, Plaintiff and other consumers would not have purchased the Products at all had they known that the Products do not contain vitamins B1, B2, and B3.  Therefore, Plaintiffs and other consumers purchasing the Products suffered injury in fact and lost money as a result of Defendants' false, misleading, unfair, and fraudulent practices, as described herein.

52.     Plaintiffs are in the same Class as all other consumers who purchased Defendants' Products during the relevant time period.  Plaintiffs and the Class members were in fact misled by Defendants' misrepresentations in respect to the Products.  Plaintiffs and Class members would have purchased other vitamins for their children if they had not been deceived by the misleading and deceptive labeling of the Products by Defendants.

53.     As a result of their misleading business practices, and the harm caused to Plaintiffs and other consumers, Defendants should be required to pay for all damages caused to consumers, including Plaintiffs.

54.     Furthermore, Defendants should be enjoined from engaging in these deceptive practices.

55.     While Defendants now sell some of the Products with the modified labels containing the qualified "select B Vitamins" representation, Defendants continue to market and sell the Products with the misleading and deceptive labels.  As of April 2021, depictions of the products with the deceptive and misleading labels still appear on the Sundown Nutrition website, as well as on major online retailers such as Amazon.

56.     Upon information and belief, Defendants still have some amount of already-manufactured product with the "old, no-diamond" label in hand that it still intends to sell, and is still actively marketing and selling.

57.     Reasonable consumers like Plaintiffs are likely to be misled and deceived by Defendants' marketing and sale of the Products with two different labels — one label that is misleading and deceptive and one that is not.

58.     Despite being deceived by Defendants, Plaintiffs wish to and are likely to continue to purchase complete multivitamin products in the future, including the Products, but only if the Products contain vitamins B1, B2, and B3, or the Products have accurate labels that indicate that they do not contain those B vitamins.  Although Plaintiffs regularly visit stores where Defendants' multivitamins are sold, and although they are aware that some of Defendants' products are now more accurately labeled as containing only "select B Vitamins," absent an injunction and because of the old, misleading labels still being marketed and sold, they will be unable to rely with confidence on Defendants' representations in the future and will therefore abstain from purchasing any of the Products, even though they would like to purchase them.  In addition, members of the proposed classes run the risk of continuing to purchase the Products, under the assumption that the Products contain vitamins B1, B2, and B3.  Until Defendants reformulate the Products, or Defendants are enjoined from making further false and misleading representations, or are enjoined from continuing to sell the Products that still have the old, misleading and deceptive "no diamond" labels, Plaintiffs and other consumers will continue to bear this ongoing injury.

## CLASS ACTION ALLEGATIONS

59.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23, and seek certification of the following Class:

> All persons in the United States and its territories, who within the relevant statute of limitations periods, purchased any of the Products bearing the "Complete" representation without the qualifying "select B vitamins" language ("Nationwide Class").

60.     Plaintiff Weinstein (the "Rhode Island Plaintiff") seeks certification of the following subclass (the "Class" or the "Rhode Island Class"):

> All persons who, within the relevant statute of limitations periods, purchased any of the Products bearing the "Complete" representation without the qualifying "select B vitamins" language in the Commonwealth of Rhode Island ("Rhode Island Class").

61.     Plaintiff Rodriguez (the "Indiana Plaintiff") seeks certification of the following subclass (the "Class" or the "Indiana Class"):

> All persons who, within the relevant statute of limitations periods, purchased any of the Products bearing the "Complete" representation without the qualifying "select B vitamins" language in the State of Indiana ("Indiana Class").

62.     Plaintiff DiMario (the "Massachusetts Plaintiff") seeks certification of the following subclass (the "Class" or the "Massachusetts Class"):

> All persons who, within the relevant statute of limitations periods, purchased any of the Products bearing the "Complete" representation without the qualifying "select B vitamins" language in the Commonwealth of Massachusetts ("Massachusetts Class").

63.     Plaintiff Younger (the "Maryland Plaintiff") seeks certification of the following subclass (the "Class" or the "Maryland Class"):

> All persons who, within the relevant statute of limitations periods, purchased any of the Products bearing the "Complete" representation without the qualifying "select B vitamins" language in the State of Maryland ("Maryland Class").

64.     Plaintiffs Weinstein and DiMario also seek certification of the following "Consumer Protection Multi-State Subclass":

> All persons in the states of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington, and Wisconsin who purchased any of the Products bearing the "Complete" representation without the qualifying "select B vitamins" language for

personal consumption from the beginning of any applicable limitations period through the date of class certification (the "Consumer Protection Multi-State Subclass").[9]

65.     The Class definition(s) may depend on the information obtained throughout discovery.  Plaintiffs hereby reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

66.     Excluded from the Classes are the Defendants, and any entities in which the Defendants have controlling interest, the Defendants' agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiffs' counsel, their staff members, and their immediate family. Also excluded from the Classes are persons or entities that purchased the Products for sole purposes of resale.

67.     Plaintiffs reserve the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

68.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

69.     **Numerosity – Fed. R. Civ. P. 23(a)(1).**  The members of the Classes are so numerous that their individual joinder herein is impracticable.  Defendants have sold millions of

---

[9]     New York General Business Law Secs. 349 and 350 prohibit unfair, deceptive, and illegal business acts and practices on the part of entities conducting business with consumers within the State of New York.  The states in the Consumer Protection Multi-State Subclass are limited to those states with similar consumer protection statutes under the facts of this case as alleged herein: California (CAL. BUS. & PROF. CODE §17200, *et seq.*); Florida (FLA. STAT. §501.201, *et seq.*); Illinois (815 ILCS 505/1, *et seq.*); Massachusetts (MASS. GEN. LAWS CH. 93A, *et seq.*); Michigan (MICH. COMP. LAWS §445.901, *et seq.*); Minnesota (MINN. STAT. §325F.67, *et seq.*); Missouri (MO. REV. STAT. §407.010, *et seq.*); New Hampshire (N.H. REV. STAT. §358-A:1); New Jersey (N.J. STAT. §56:9-1, *et seq.*); Rhode Island (R.I. GEN. L. CH. 6-13.1); Washington (WASH. REV. CODE §19.86010, *et seq.*), and Wisconsin (WIS. STAT. §100.18, *et seq.*).

units of the Products. The Products are sold in store and/or online at various retailers and pharmacies including but not limited to Amazon.com, Kroger, Target, Walgreens, CVS, and Walmart. On information and belief, members of the Classes number in the thousands to tens of thousands. The number of members in the Classes is presently unknown to Plaintiffs but may be verified by Defendants' sales records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

70. **Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

    a.    Whether or not the Products were misleadingly advertised as "Complete" multivitamin gummies;

    b.    Whether the Products contain vitamins B1, B2, and B3;

    c.    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    d.    Whether Defendants' actions violate the state consumer protection statutes invoked below;

    e.    Whether Defendants' actions constitute common law fraud;

    f.    Whether Plaintiffs and members of the Class were damaged by Defendants' conduct;

    g.    Whether Defendants were unjustly enriched at the expense of Plaintiffs and Class members; and

    h.    Whether Plaintiffs and Class members are entitled to injunctive relief.

71.     Defendants engaged in a common course of conduct giving rise to the legal rights Plaintiffs seek to enforce, on behalf of themselves and the other Members of the Classes.  Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

72.     **Typicality – Fed. R. Civ. P. 23(a)(3)**.  The claims of the named Plaintiffs are typical of the claims of other members of the Classes.   All members of the Classes were comparably injured by Defendants' conduct described above, were all exposed to the same or substantially similar false and misleading representations, purchased the Products relying on the uniform false and misleading representations, suffered losses as a result of such purchases, and there are no defenses available to Defendants that are unique to Plaintiffs or any particular Class members.

73.     **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).**  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of other Class members, they have retained class counsel competent to prosecute class actions and financially able to represent the Classes, and intend to prosecute this action vigorously.  Class counsel is experienced in class action litigation involving the type of false and misleading advertising found here.  The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and their counsel.

74.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and

expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants.  The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

75.    **Declaratory and Injunctive Relief – Fed. R. Civ. P. 23(b)(2).**  Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole.  In particular, Plaintiffs seek to certify a Class to enjoin Defendants from selling or otherwise distributing the Products until such time that Defendants can demonstrate to the Court's satisfaction that all the Products are accurately labeled.

76.    **Superiority – Fed. R. Civ. P. 23(b)(3).**  A class action is superior to any other means of adjudication for this controversy.  It would be impracticable for members of the Classes to individually litigate their own claims against Defendants because the damages suffered by Plaintiffs and the members of the Classes are relatively small compared to the cost of individually litigating their claims.  Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system.  A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
**Violation of the State Consumer Protection Statutes
(On Behalf of the Consumer Protection Multi-State Class)**

77.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

78.    The Consumer Protection Statutes of the states in the Consumer Protection Multi-

State Subclass prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

79.     Plaintiffs Weinstein and DiMario and the other Members of the Consumer Protection Multi-State Subclass have standing to pursue a cause of action for violation of the Consumer Protection Statutes of the states in the Consumer Protection Multi-State Subclass because Plaintiffs and Members of the Consumer Protection Multi-State Subclass have suffered an injury in fact and lost money as a result of Defendants' actions set forth herein.  (For purposes of this Count I, "Plaintiffs" refers to Plaintiffs Weinstein and DiMario only).

80.     Defendants engaged in unfair and/or deceptive conduct, including, but not limited to the following:

a.     uniformly misrepresenting on each of the Products that they were each a "Complete" multivitamin gummy;

b.     uniformly misrepresenting on each of the Products that they contained "B Vitamins" (without any qualification or restricting language), and;

c.     uniformly misrepresenting on each of the Products that they were a "Complete" multivitamin gummy containing "B Vitamins" when each of the Products did not contain vitamins B1, B2, and B3.

81.     Defendants' misrepresentations were made to Plaintiffs and Class Members each time that the Products were marketed and sold to Plaintiffs and Class Members, as the misrepresentations were prominently displayed on the Products' labels.

82.     Defendants intended that Plaintiffs and each of the other members of the Consumer Protection Multi-State Subclass would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

83.     As a result of Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Consumer Protection Multi-State Class have sustained damages in an amount to be proven at trial.

84.     In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT II**
**Intentional Misrepresentation**
**(On behalf of the Nationwide Class and the State Subclasses)**

85.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein

86.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendants.

87.     Defendants have marketed the Products in a manner indicating that the Products were "Complete" and contained all the "B Vitamins." However, the Products do not contain the Missing B Vitamins. Therefore, Defendants have made a misrepresentation as to the Products.

88.     Defendants' representation regarding the Products is material to a reasonable consumer because it relates to the composition of the Products purchased by the consumer. A reasonable consumer would attach importance to such representation and would be induced to act thereon in making purchase decisions.

89.     At all relevant times when such misrepresentation was made, Defendants knew that the representation was false and misleading, or have acted recklessly in making the representation and without regard to the truth.

90.     Defendants intended that Plaintiffs, and other consumers rely on the representation made about the Products, as the representations are made on the front and rear panels of the Products' label.

91.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendants' intentional misrepresentation when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

92.     Therefore, as a direct and proximate result of Defendants' intentional misrepresentation, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT III**
**Negligent Misrepresentation**
**(On behalf of the Nationwide Class and the State Subclasses)**

93.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

94.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendants.

95.     Defendants have marketed the Products in a manner indicating that the Products were "Complete" and contained all the "B Vitamins."  However, the Products do not contain the Missing B Vitamins.  Therefore, Defendants have made a misrepresentation as to the Products.

96.     Defendants' representations regarding the Products is material to a reasonable consumer because it relates to the composition of the Products purchased by consumers.  A reasonable consumer would attach importance to such representations.

97.     At all relevant times when such misrepresentations were made, Defendants knew or have been negligent in not knowing that that the representations were false and misleading. Defendants have no reasonable grounds for believing its representations were not false and

misleading.

98.     Defendants intended that Plaintiffs and other consumers rely on the representation made about the Products, as the representation is made on the front and rear panel of the Products' label.

99.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendants' negligent misrepresentation when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

100.    Therefore, as a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT IV**
**Common Law Fraud**
**(On behalf of the Nationwide Class and the State Subclasses)**

101.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

102.    Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendants.

103.    Defendants have willfully, falsely, and knowingly formulated the Products without the Missing B Vitamins.  Despite the absence of the Missing B Vitamins, however, Defendants have intentionally represented that the Products are "Complete" multivitamin supplements containing "B Vitamins" (without any qualifying or restricting language).  Therefore, Defendants have made an intentional misrepresentation as to the Products.

104.     Defendants' misrepresentations were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the composition of the Products.

105.     Defendants knew or recklessly disregarded the fact that the Products did not in fact contain the Missing B Vitamins.

106.     Defendants intended that Plaintiffs, and other consumers rely on this representation, as the representation is made on the front panel of the Products' label.

107.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendants' misrepresentation when purchasing the Products.

108.     Had the correct facts been known, Plaintiffs and member of the Classes would not have purchased the Products or would not have purchased them at the prices at which they were offered.

109.     Therefore, as a direct and proximate result of Defendants' fraud, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, the premium price paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT V**
**Breach of Express Warranties**
**(On behalf of the Nationwide Class and the State Subclasses)**

110.     Plaintiffs incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

111.     Defendants have expressly warranted that the Products are each a "Complete" multivitamin supplement containing "B Vitamins."  These representation about the Products: (1)

are an affirmation of fact or promise made by Defendants, to consumers, that the Products contain all the vitamins; (2) became part of the basis of the bargain to purchase the Products; and (3) created an express warranty that the Products would conform to the affirmation of fact or promise. In the alternative, the representation is a description of good, which was made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the Products' description.

112.    This labeling, marketing, and advertising, which existed on the labels of the Products when they left Defendants' control and were made directly to consumers and end purchasers of the Products, constitute express warranties and became part of the basis of the bargain between the parties and created a collective "express warranty" that the Products would conform to Defendants' affirmations and promises.

113.    Plaintiffs and members of both the Nationwide Class and State Subclasses reasonably and justifiably relied on the foregoing express warranty in purchasing the Products, believing that that the Products did in fact conform to the warranty.

114.    Defendants breached the express warranty made to Plaintiffs and members of both the Nationwide Class and State Law Subclasses by failing to formulate, manufacture, and sell the Products to satisfy that warranty.

115.    Defendants breached express warranties about the Products and their qualities because Defendants' statements about the Products were false and the Products do not conform to Defendants' affirmations and promises described above.

116.    Plaintiffs and members of both the Nationwide Class and State Law Subclasses paid a premium price for the Products but did not obtain the full value of the Products as represented.  If Plaintiffs and members of both the Nationwide Class and State Law Subclasses

had known of the true nature of the Products, they would not have purchased the Products or would not have been willing to pay the premium price associated with the Products.

117.    Defendants' conduct described in this Complaint constitutes a breach of express warranties under U.C.C. §2-313, as adopted by the following state statutes:

> Ala. Code §7-2-313, *et seq.*; Alaska Stat. §45.02.313, *et seq.*; Ariz. Rev. Stat. §47-2313, *et seq.*; Ark. Code §4-2-313, *et seq.*; Cal. Com. Code §2313, *et seq.*; Colo. Rev. Stat. §4-2-313, *et seq.*; Conn. Gen. Stat. §42a-2-313, *et seq.*; 6 Del. C. §2-313, *et seq.*; D.C. Code §28:2-313, *et seq.*; Fla. Code §672.313, *et seq.*; O.C.G.A. §11-2-313, *et seq.*; Haw. Rev. Stat. §490:2-313, *et seq.*; Idaho Code §28-2-313, *et seq.*; 810 Ill. Comp. Stat. 5/2-313, *et seq.*; Ind. Code §26-1-2-313, *et seq.*; Iowa Code §554.2313, *et seq.*; Kan. Stat. §84-2-313, *et seq.*; Ky. Rev. Stat. §355.2-313, *et seq.*; La. Rev. Stat §9:2800.53(6), *et seq.*; 11 M.R.S.A. §2-313, *et seq.*; Md. Code Ann., Com. Law §2-313, *et seq.*; Mass. Code 106, §2-313, *et seq.*; Mich. Comp. Laws 440.2313, *et seq.*; Minn. Stat. §336.2-313, *et seq.*; Miss. Code §75-2-313, *et seq.*; Mo. Rev. Stat. §400.2-313, *et seq.*; Mont. Code §30-2-313, *et seq.*; Neb. U.C.C. §2-313, *et seq.*; Nev. Rev. Stat. §104.2313, *et seq.*; N.H. Rev. Stat. §382-A:2-313, *et seq.*; N.J. Stat. §12A:2-313, *et seq.*; N.M. Stat. §55-2-313, *et seq.*; N.Y. U.C.C. 2-313, *et seq.*; N.C. Gen. Stat. §25-2-313, *et seq.*; N.D. Cent. Code §41-02-30, *et seq.*; Ohio Rev. Code §1302.26, *et seq.*; Okla. Stat. Tit. 12A, §2-313, *et seq.*; Or. Rev. Stat. §72.3130, *et seq.*; 13 Pa. Cons. Stat. §2313, *et seq.*; R.I. Gen. Laws §6A-2-313, *et seq.*; S.C. Code §36-2-313, *et seq.*; S.D. Codified Laws §57A-2-313, *et seq.*; Tenn. Code §47-2- 313, *et seq.*; V.T.C.A., Bus. & C. §2.313, *et seq.*; Utah Code §70A-2-313, *et seq.*; Vt. Stat. Tit. 9A, §2-313, *et se*q.; Va. Code §8.2-313, *et seq.*; Wash. Rev. Code §62A.2-313, *et seq.*; W. Va. Code §46-2-313, *et seq.*; Wis. Stat. §402.313, *et seq.*; and Wyo. Stat. §34.1-2-313, *et seq.*

118.    As a result of Defendants' breach of warranty, Plaintiffs and each member of the Classes has been damaged in an amount equal to the difference in value between the Products containing the Missing B Vitamins and the Products not containing the Missing B Vitamins, and/or in an amount to be determined at trial and any consequential damages resulting from their purchases.

119.    Plaintiffs and the Classes were not required to notify Defendants of their breaches of warranty because the goods sold were for human ingestion.

120.    Nonetheless, on or about February 25, 2021, prior to filing suit, Plaintiffs and

members of the Classes notified Defendants as to their breaches of warranty.

121.    Defendants refused to provide adequate relief to Plaintiffs and the Classes for their breaches of warranty alleged herein.

**COUNT VI**
**Breach of Implied Warranties**
**(On behalf of the Nationwide Class and the State Subclasses)**

122.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

123.    Plaintiffs bring this claim against Defendants on behalf of themselves, the Nationwide Class, and the State Subclasses (for purposes of this Count, the "Classes").

124.    Defendants are merchants with respect to the sale of dietary supplements, including the Products.  Therefore, a warranty of merchantability is implied in every contract for sale of the Products to consumers in all states that have adopted U.C.C. §§2-314 and 2-315 in their state statutes.

125.    In representing on the label that the Products are "Complete" multivitamin Supplements containing the "B Vitamins" (without any qualifying or restricting language), Defendants have provided a promise or affirmation of fact to consumers, that the Products contain all the B Vitamins, including vitamins B1, B2, and B3.

126.    However, the Products do not contain the Missing B Vitamins.

127.    The Products were unfit for their ordinary use and were not of merchantable quality and/or did not conform to the promises or affirmations of fact made on the label, as warranted by Defendants, because they did not confer the health benefits associated with vitamins B1, B2, and B3 due to the absence of those vitamins in the Products.  Prior to purchase, Plaintiffs and the members of the Classes could not have really discovered that the Products were not fit for its

ordinary purpose and did not conform to the quality previously represented.

128. Similarly, the Products were unfit for their particular purpose. At the time Plaintiffs and members of the Classes purchased the Products, Defendants knew or should have known that Plaintiffs and the members of the Classes would purchase and consume the Products because are labeled and advertised as being "Complete" multivitamin gummies containing "B Vitamins." However, Defendants' Products were not suitable for this purpose at the point of sale because the Products did not contain vitamins B1, B2, and B3 and did not confer any of the benefits associated with those vitamins.

129. The Products were unfit for their ordinary use and were not of merchantable quality and/or did not conform to the promises or affirmations of fact made on the label and were unfit for their particular purpose when they left Defendants' control.

130. Therefore, Defendants have breached their implied warranty of merchantability regarding the Products.

131. If Plaintiffs and members of both the Nationwide Class and State Subclasses had known that the Products did not conform to Defendants' promise or affirmation of fact, they would not have purchased the Products or would not have been willing to pay the premium price associated with Products. Accordingly, Plaintiffs and the members of the Classes did not receive the benefit of their bargain in purchasing the Products.

132. Defendants' conduct described in this Complaint constitutes a breach of implied warranties under U.C.C. §§2-314 and 2-315, as adopted by the following state statutes:

Ala. Code §7-2-314, *et seq*.; Alaska Stat. §45.02.314, *et seq*.; Ariz. Rev. Stat. §47-2314, *et seq*.; Ark. Code §4-2-314, *et seq*.; Cal. Com. Code §2314, *et seq*.; Colo. Rev. Stat. §4-2-314, *et seq*.; Conn. Gen. Stat. §42a-2-314, *et seq*.; 6 Del. C. §2-314, *et seq*.; D.C. Code §28:2-314, *et seq*.; Fla. Code § 672.314, *et seq*.; O.C.G.A. §11-2-314, *et seq*.; Haw. Rev. Stat. §490:2-314, *et seq*.; Idaho Code §28-2-314, *et seq*.;

810 Ill. Comp. Stat. 5/2-314, *et seq.*; Ind. Code §26-1-2-314, *et seq.*; Iowa Code §554.2314, *et seq.*; Kan. Stat. §84-2-314, *et seq.*; Ky. Rev. Stat. §355.2-314, *et seq.*; La. Rev. Stat §9:2800.53(6) , *et seq.*; 11 M.R.S.A. §2-314, *et seq.*; Md. Code Ann., Com. Law §2-314, *et seq.*; Mass. Code 106, §2-314, et seq.; Mich. Comp. Laws 440.2314, *et seq.*; Minn. Stat. § 336.2-314, *et seq.*; Miss. Code §75-2-314, *et seq.*; Mo. Rev. Stat. §400.2-314, *et seq.*; Mont. Code §30-2-314, *et seq.*; Neb. U.C.C. §2-314, *et seq.*; Nev. Rev. Stat. §104.2314, *et seq.*; N.H. Rev. Stat. §382-A:2-314, *et seq.*; N.J. Stat. §12A:2-314, *et seq.*; N.M. Stat. §55-2-314, *et seq.*; N.Y. U.C.C. §2-314, *et seq.*; N.C. Gen. Stat. §25-2-314, *et seq.*; N.D. Cent. Code §41-02-30, *et seq.*; Ohio Rev. Code §1302.26, *et seq.*; Okla. Stat. Tit. 12A, §2-314, *et seq.*; Or. Rev. Stat. §72.3130, *et seq.*; 13 Pa. Cons. Stat. §2314, *et seq.*; R.I. Gen. Laws §6A-2-314, *et seq.*; S.C. Code §36-2-313, *et seq.*; S.D. Codified Laws §57A-2-313, *et seq.*; Tenn. Code §47-2- 314, *et seq.*; V.T.C.A., Bus. & C. §2.314, *et seq.;* Utah Code §70A-2-314, *et se*q.; Vt. Stat. Tit. 9A, §2-314, et seq.; Va. Code §8.2-314, *et seq.*; Wash. Rev. Code §62A.2-314, *et seq.*; W. Va. Code §46-2-314, *et seq.*; Wis. Stat. §402.314, *et seq.*; and Wyo. Stat. §34.1-2-314, *et seq.*

133.    As a result of Defendants' breach of warranty, Plaintiffs and each member of the Classes has been damaged in an amount equal to the difference in value between the Products containing the Missing B Vitamins and the Products not containing the Missing B Vitamins, and/or in an amount to be determined at trial and any consequential damages resulting from their purchases.

134.    Plaintiffs and the Classes were not required to notify Defendants of their breaches of warranty because the goods sold were for human ingestion.

135.    Nonetheless, on or about February 25, 2021, prior to filing suit, Plaintiffs and Members of the Classes notified Defendants as to their breaches of warranty.

136.    Defendants refused to provide adequate relief to Plaintiffs and the Classes for their breaches of warranty alleged herein.

<u>COUNT VII</u>
**Unjust Enrichment**
**(On Behalf of the Nationwide Class and the State Subclasses)**

137.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

138.    Plaintiffs brings this claim individually and on behalf of the members of the Classes against Defendants.

139.    As alleged herein, Defendants intentionally and recklessly made misleading representations about the Products to Plaintiffs and members of the Classes to induce them to purchase the Products.

140.    Plaintiffs and members of the Classes have reasonably relied on the misleading representations and would be induced to act thereon in making purchase decisions.

141.    Plaintiffs and members of the Classes have not received all the benefits promised by Defendants.  Plaintiffs and members of the Classes therefore have been induced by Defendants' misleading and false representations about the Products, and paid for them when they would and/or should not have, or paid more money to Defendants for the Products than they otherwise would and/or should have paid.

142.    Plaintiffs and members of the Classes conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiffs and members of the Classes.

143.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Defendants.

144.    Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them without paying Plaintiffs and the members of the Classes back

for the difference of the full value of the benefit compared to the value actually received.

145.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

**COUNT VIII**
**Violations of Rhode Island Deceptive Trade Practices Act,**
**R.I. GEN. LAWS §§6-13.1, *et seq*.**
**(On Behalf of Plaintiff Weinstein and the Rhode Island Subclass)**

146.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

147.     Plaintiff Weinstein and the Rhode Island Subclass members are each a "person," as defined by R.I. GEN. LAWS §6-13.1-1(3).

148.     Plaintiff Weinstein and Rhode Island Subclass members purchased Defendants' Products in the State of Rhode Island for personal, family, or household purposes.

149.     Defendants advertised, offered, or sold their Products in Rhode Island and engaged in trade or commerce directly or indirectly affecting the people of Rhode Island, as defined by R.I. GEN. LAWS §6-13.1-1(5).

150.     Defendants engaged in unfair and deceptive acts and practices, in violation of R.I. GEN. LAWS §6-13.1-2 by representing that goods and services have characteristics, uses, and benefits that they do not have (R.I. GEN. LAWS §6-13.1-52(6)(v)); representing that goods and services are of a particular standard or quality when they are of another (R.I. GEN. LAWS §6-13.1-52(6)(vii)); advertising goods or services with intent not to sell them as advertised (R.I. GEN. LAWS §6-13.1-52(6)(ix)); engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding (R.I. GEN. LAWS §6-13.1-52(6)(xii)); engaging in any act or practice that is

unfair or deceptive to the consumer (R.I. GEN. LAWS §6-13.1-52(6)(xiii)); and using other methods, acts, and practices that mislead or deceive members of the public in a material respect (R.I. GEN. LAWS §6-13.1-52(6)(xiv)).

151.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

152.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff Weinstein and Rhode Island Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendants' Products.

153.    Plaintiff Weinstein and Rhode Island Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $200 per Subclass Member (whichever is greater), punitive damages, injunctive relief, other equitable relief, and attorneys' fees and costs.

**COUNT IX**
**Violations of Indiana Deceptive Consumer Sales Act,**
**IND. CODE §§24-5-0.5-1, *et seq*.**
**(On Behalf of Plaintiff Rodriguez and the Indiana Subclass)**

154.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

155.    Plaintiff Rodriguez and members of the Indiana Subclass are persons who purchased Defendants' Products in the State of Indiana.

156.    Defendants are each a "person" as defined by IND. CODE §24-5-0.5-2(a)(2).

157.    Each Defendant is a "supplier" as defined by IND. CODE §24-5-0.5-2(a)(3) because it regularly engages in or solicits "consumer transactions" within the meaning of IND. CODE §24-5-0.5-2(a)(3)(A).

158.    Defendants engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of IND. CODE §24-5-0.5-3(a).

159.    Defendants' acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

160.    The injury to consumers from Defendants' conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury.  The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

161.    Defendants' acts and practices were "abusive" for numerous reasons: (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction; consumers lacked an understanding of the material risks and costs of a variety of their transactions; (c) because they took unreasonable advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Defendants; and (d) because Defendants took unreasonable advantage of consumers' reasonable reliance that they were providing truthful and accurate information.

162.    Defendants also engaged in "deceptive" acts and practices in violation of IND. CODE §24-5-0.5-3(a) and §24-5-0.5-3(b) by (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have and by

(b) misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

163.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

164.    Defendants received notice pursuant to IND. CODE §24-5-0.5-5(a) concerning their wrongful conduct as alleged herein by Plaintiff Rodriguez and the Indiana Subclass members. Defendants' conduct includes incurable deceptive acts that Defendants engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under IND. CODE §24-5-0.5-2(a)(8).

165.    As a direct and proximate result of Defendants' uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiff Rodriguez and the Indiana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendants' Products.

166.    Defendants' violations present a continuing risk to Plaintiff Rodriguez and Indiana Subclass members as well as to the general public.

167.    Plaintiff Rodriguez and the Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

**<u>COUNT X</u>**
**Violations of Maryland Consumer Protection Act,**
**MD. CODE. ANN., COM. LAW §13-301, *et seq*.**
**(On Behalf of Plaintiff Younger and the Maryland Subclass)**

168.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint

as if fully stated herein.

169.     Defendants are each a "person" as defined by MD. CODE ANN., COM. LAW §13-101(h).

170.     Defendants' conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined MD. CODE ANN., COM. LAW §§13-101(i) and 13-303.

171.     Plaintiff Younger and the Maryland Subclass members are "consumers" as defined by MD. CODE ANN., COM. LAW §13-101(c)(1), who purchased Defendants' Products in the State of Maryland.

172.     Defendants advertise, offer, or sell "consumer goods" as defined by MD. CODE ANN., COM. LAW §13-101(d).

173.     Defendants advertised, offered, or sold goods in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

174.     Defendants engaged in unfair and deceptive trade practices, in violation of MD. CODE ANN., COM. LAW §13-301 by: (a) making false or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers; (b) representing that consumer goods or services have a characteristic that they do not have; (c) representing that consumer goods  are of a particular standard, quality, or grade that they are not; and (d) failing to state a material fact where the failure deceives or tends to deceive.

175.     Defendants engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods in violation of MD. CODE ANN., COM. LAW §13-303.

176.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

177.     As a direct and proximate result of Defendants' deceptive acts and practices,

Plaintiff Younger and the Maryland Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendants' Products.

178.     Plaintiff Younger and the Maryland Subclass members seek all monetary and non-monetary relief allowed by law, including damages, injunctive relief, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.     For an order certifying the Nationwide Class, the Consumer Protection Multi-State Subclass, and the State Subclasses, under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representative of all Classes (with the appropriate Plaintiffs being named as representatives for the State Subclasses and Consumer Protection Multi-State Subclass); and naming Plaintiffs' attorneys as Class Counsel to represent all Classes;

B.     For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

C.     For an order finding in favor of Plaintiffs, and all Classes, on all counts asserted herein;

D.     Enjoining Defendants from engaging in the unlawful conduct set forth herein;

E.     Ordering Defendants to pay damages to Plaintiffs and the other members of the Classes, including, but not limited to, damages resulting in the ordinary course of events from the sellers' breach as determined in any manner which is reasonable, and any incidental and consequential damages;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.      Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

H.      Ordering Defendants to pay reasonable attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

I.      Ordering Defendants to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

J.      Ordering such other and further relief as may be just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.  Plaintiffs also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: September 28, 2021                              Respectfully Submitted,

By:  /s/ *Joseph P. Guglielmo*
**SCOTT+SCOTT ATTORNEYS**
**AT LAW LLP**
Joseph P. Guglielmo
Sean T. Masson
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Phone: (212) 223-4478
Fax: (212) 223-6334
jguglielmo@scott-scott.com
smasson@scott-scott.com

Gary E. Mason
David K. Lietz
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Phone: (202) 640-1160
Fax: (202) 429-2294
gmason@masonllp.com
dlietz@masonllp.com

Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: (202) 640-1160
Fax: (202) 429-2294
gklinger@masonllp.com

*Attorneys for Plaintiffs and the Class*