UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HOLLY WEINSTEIN, PEGGY RODRIGUEZ,
ANDREA DIMARIO and CRYSTAL YOUNGER,
individually and on behalf of all others similarly situated,

                            Plaintiffs,

            -against-

REXALL SUNDOWN, INC., NATURESMART, LLC,
and THE BOUNTIFUL COMPANY f/k/a THE
NATURE'S BOUNTY CO.,

                            Defendants.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 21-5378 (JS) (ARL)

**LINDSAY, Magistrate Judge:**

The plaintiffs, Holly Weinstein, Peggy Rodriguez, Andrea Dimario and Crystal Younger, commenced this consumer protection and false advertising action on September 28, 2021, against the defendants, Rexall Sundown, Inc., NatureSmart, LLC, and The Bountiful Company f/k/a The Nature's Bounty Co. The crux of the plaintiffs' claim is that under the brand name Sundown Kids, the defendants' are selling various multivitamins advertised as "Complete Multivitamin Gummies" containing "B Vitamins" and "13 Essential Nutrients." However, the products do not contain Vitamin B1 (thiamine), Vitamin B2 (riboflavin), and Vitamin B3. Before the Court, on referral from District Judge Seybert, is the motion of the defendants to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons set forth below, the undersigned respectfully recommends that the motion be granted, in part, and denied, in part.

## BACKGROUND

The following facts are drawn from the complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These

facts, however, do not constitute findings of fact by the Court.  *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

### A.    The Parties

The plaintiff Holly Weinstein ("Weinstein") is a citizen of Rhode Island, residing in Kent County.  Compl. ¶ 19.  On May 18, 2020, Weinstein purchased Sundown Kids Disney Frozen 2 Complete Multivitamin Gummies for $5.99 from Amazon.com from her home in Rhode Island. *Id.*  On December 27, 2020, Weinstein then purchased two bottles of the Sundown Kids Sundown Naturals Kids Pixar Two Story Complete Multivitamin Gummies for $7.49 from Amazon.com also from her home in Rhode Island.  *Id.*  The plaintiff Peggy Rodriguez ("Rodriguez") is a citizen of Indiana, residing in Johnson County.  *Id.* ¶ 20.  On March 13, 2020, Rodriguez purchased a bottle of Sundown Kids Sundown Naturals Disney Princess Complete Multivitamin Gummies for $14.99 from the Kroger grocery store and pharmacy located at 3100 Meridian Park Drive, Greenwood, Indiana.  *Id.*  The plaintiff Andrea Dimario ("Dimario") is a citizen of Massachusetts, residing in Essex County.  *Id.* ¶ 21.  In late 2020, Dimario purchased a bottle of Sundown Kids Incredibles 2 Complete Multivitamin Gummies bearing lot number 507880-01 from a CVS or Target store near her home in Massachusetts.  *Id.* The plaintiff Crystal Younger ("Younger") is a citizen of Maryland, residing in Charles County.  *Id.* ¶ 22.  On February 3, 2021, Younger purchased a bottle of Sundown Kids Star Wars Complete Multivitamin Gummies for $12.39 from Amazon.com from her home in Maryland.  *Id.*

The defendant Rexall Sundown, Inc. ("Rexall") is a company incorporated in Florida, with a principal place of business at 110 Orville Drive Northwest, Bohemia, New York.  *Id.* ¶ 23. Rexall is a wholly-owned subsidiary of The Bountiful Company.  *Id.*   Rexall formulates,

manufactures, labels, markets, distributes, and sells multivitamins nationwide.  *Id*.  The defendant NatureSmart, LLC ("NatureSmart") is a Colorado limited liability company with a principal place of business in Bohemia, New York.  *Id.* ¶ 24.  NatureSmart also formulates, manufactures, labels, markets, distributes, and sells multivitamins nationwide.  *Id.*  The defendant The Bountiful Company f/k/a The Nature's Bounty Co. ("Bountiful") is a company incorporated in Delaware with a principal place of business at 2100 Smithtown Ave., Ronkonkoma, New York.  *Id.* ¶ 25.  Like Rexall and NatureSmart, the plaintiffs allege that Bountiful formulates, manufactures, labels, markets, distributes, and sells multivitamins nationwide and maintains substantial distribution and sales in this District.  *Id.*

## B.   The Multivitamins

As indicated above, the plaintiffs allege that the defendants sell a variety of children's flavored multivitamin gummy products, including:  Disney and Pixar Incredibles 2 Multivitamin Gummies; Disney and Pixar Toy Story 4 Complete Multivitamin Gummies; Disney Frozen 2 Complete Multivitamin Gummies; Disney Princess Complete Multivitamin Gummies; Marvel's Avengers Complete Multivitamin Gummies; Marvel's Spider-Man Complete Multivitamin Gummies; and Star Wars Complete Multivitamin Gummies (collectively, "the Products").  *Id*. ¶¶ 1-2.  The label on the front of each of the Products includes the words "Complete Multivitamin Gummies." *Id.* ¶ 31.  The Products' labels also state that the Products each contain "B Vitamins" and "13 Essential Nutrients."[1] *Id.* ¶ 32.  The label on the reverse side of the Products' cylindrical bottles has a box entitled "Clean Nutrition," which also states that the Products contain 13 Essential Nutrients including Vitamins A, C, D, E and "B Vitamins."  *Id.*  However, the

---

[1] According to the U.S. Department of Health & Human Services, the FDA, the NIH, and the National Institute on Aging, "[t]here are 13 essential vitamins — vitamins A, C, D, E, K, and the B vitamins (thiamine, riboflavin, niacin, pantothenic acid, biotin, B6, B12, and folate)."  Compl. ¶ 26.

Supplement Facts box located next to the Clean Nutrition box itemizes the vitamins actually included in the product and Vitamins B1, B2 and B3 are in that list of ingredients.  *Id.*

Nonetheless, the plaintiffs complain that the use of the word "Complete" on the front of the bottle, coupled with the words "B Vitamins," led them to believe that the Products contained all of the B vitamins recognized by the FDA and NIH as essential, including Vitamins B1, B2, and B3.  *Id.* ¶ 34.  In addition, the plaintiffs contend that the additional representation on the Products' labels of "13 Essential Nutrients" reinforces the belief of reasonable consumers that the Products contain all of the B vitamins.  *Id.* ¶ 35.

In further support of their claim that the label is misleading, the plaintiffs further note that in 2020, the defendants added a diamond-shaped symbol next to the word "Complete" on the front label, which refers consumers to a part of the rear label that has now been modified to read "select" B Vitamins. *Id.* ¶ 41.  The defendants have also changed the phrase "13 Essential Nutrients" to "13 Key Nutrients." *Id.*  Still, the plaintiff's claim that as of April 2021, the prior deceptive and misleading labels appeared on the Sundown Nutrition website as well as on major online retailers such as Amazon.  *Id*. ¶ 55.

In sum, the plaintiffs allege that, given the deceptive labels, they and other consumers paid an unlawful premium for the Products.  *Id*. ¶ 51.  Moreover, the plaintiffs assert that they would not have purchased the Products at all or, at least would have paid significantly less for the Products, had they known that the Products did not contain Vitamins B1, B2, and B3.  *Id*.

## DISCUSSION

### A.      Standards of Review

### 1.       12(b)(1)

4

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), a federal court must dismiss a claim when it lacks jurisdiction over the subject matter of the action. *See* Fed. R. Civ. P. 12(b)(1); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). The party asserting subject matter jurisdiction has the burden to prove the Court's jurisdiction by a preponderance of the evidence. *See Vailette v. Lindsay*, No. 11-cv-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014).

In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court must assume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.*, 185 F. Supp. 3d 317, 324 (E.D.N.Y. 2016). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In addition, in ruling upon a Rule 12(b)(1) motion alleging lack of subject matter jurisdiction, the factual presumption does not attach to jurisdictional allegations." *Arbitron, Inc. v. 3 Cities, Inc.,* 438 F. Supp. 2d 216, 217 (S.D.N.Y. 2006).

## 2.     Rule 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), aff'd, 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010)). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to

5

be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

 "A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review 'to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Florimon v. Allstate Ins. Co.,* 616 F. Supp. 3d 180, 185 (D. Conn. 2022) (citing *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007)).  However, "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230–31 (2d Cir. 2016).  *Id.*

### B.      The Consumer Protection, Fraud and Breach of Express Warranty Claims

The defendants first move to dismiss the plaintiffs' claims based on various state consumer protection statutes (Counts I, VIII and IX[2]), the plaintiffs' misrepresentation and fraud

---

[2] The court assumes that the defendants also intended to include Count X in their memorandum, which asserts a claim under the Maryland Consumer Protection Act in the list of counts.  The Court also takes this opportunity to note that the complaint does not include a specific count under the Massachusetts General Law Chapter 93A.

claims (Counts II, III and IV), and the plaintiffs' breach of express warranty claims (Count V), on the ground that the challenged representations underlying each of the causes of action were not deceptive.  In order to address these arguments, the Court must consider several principles.

To begin with, it is well settled that a court may, under certain circumstances, dismiss a consumer fraud claim as a matter of law where it finds an allegedly deceptive advertisement would not have misled a reasonable consumer.  *See Fink v. Time Warner Cable,* 714 F.3d 739, 741 (2d Cir. 2013) (per curiam).  But it is important to note that assessing whether an act is likely to mislead a reasonable consumer is generally an inquiry not suited for resolution at the motion to dismiss stage.  *See Duran v. Henkel of Am., Inc.,* 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

Second, in cases involving state law claims over which the Court has federal diversity jurisdiction, a federal court's role is to carefully predict how each state court would rule on the issue presented.  *See Haar v. Nationwide Mut. Fire Ins. Co.,* 918 F.3d 231, 233 (2d Cir.), certified question accepted, 32 N.Y.3d 1211, 122 N.E.3d 552 (2019), and certified question answered, 34 N.Y.3d 224, 138 N.E.3d 1080 (2019).[3]  Although the plaintiffs in this case reside in four different states, to avoid unnecessary repetition, the undersigned will discuss the purportedly false and misleading statements identified by the plaintiffs in the context of New York law because the rules governing what constitute an actionable misleading or deceptive statement is generally applicable to all of the plaintiffs' claims in this case.  *See e.g.*

---

[3] "'When a federal district court sits in diversity, it generally applies the law of the state in which it sits, including that state's choice of law rules'." *Segovia v. Vitamin Shoppe, Inc.,* No. 14-CV-7061 (NSR), 2016 WL 8650462, at *2 (S.D.N.Y. Feb. 5, 2016) (citing *In re Coudert Bros. LLP,* 673 F.3d 180, 186 (2d Cir. 2012)).  "Applying New York's choice of law rules to class action claims for consumer fraud, breach of warranty, and unjust enrichment, [courts in this Circuit have] explained that New York law requires application of the law of the state where each plaintiff resides and purchased the relevant product. *Id.* (citing *In re Grand Theft Auto Video Game Consumer Litig.,* 251 F.R.D. 139, 146-50 (S.D.N.Y. 2008)).

*MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023) (New York General Business Law §§ 349 and 350 require a claimant to show that the defendant engaged in consumer-oriented conduct that is materially misleading*); In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 586 (M.D. Pa. 2009) (The Rhode Island Unfair Trade Practice and Consumer Protection Act ("RIUTPCPA") enumerates twenty methods of unfair or deceptive competition, including conduct that "creates a likelihood of confusion or of misunderstanding); *Wiseman v. First Mariner Bank*, 2013 WL 5375248, at *24 (D. Md. Sept. 23, 2013) (In Maryland, the CPA prohibits the making of misleading representations that have the "capacity, tendency, or effect of deceiving or misleading consumers" judged from the point of view of a reasonable, but unsophisticated consumer.); *Hughes v. Chattem, Inc*., 818 F. Supp. 2d 1112, 1121 (S.D. Ind. 2011) (Under Section 24–5–0.5–3(a) of the Indiana Code, deceptive acts include representations that a product has characteristics, uses, or benefits that it does not have); *Tomasella v. Nestle USA, Inc*., 962 F.3d 60, 70 (1st Cir. 2020) (Under Mass Gen. Laws Chapter 93A, "an act or practice is deceptive 'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'").  With these concepts in mind, the Court turns to the merits of the defendants' first argument.

"To state a claim for false advertising or deceptive business practices under New York . . . law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381–82 (S.D.N.Y. 2021) (citing *Mantikas v. Kellogg Co*., 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).   When the issue before the Court, as here, concerns whether packaging is materially

misleading, courts must determine "whether a 'significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Vazquez v. Walmart, Inc.,* No. 22-CV-6215 (JPO), 2023 WL 8257999, at *2 (S.D.N.Y. Nov. 29, 2023) (citing *Jessani v. Monini N. Am., Inc.,* 744 F. App'x 18, 19 (2d Cir. 2018)).  For this reason, the plaintiffs must do more than plausibly allege that the Products' labels might have been misunderstood by a few consumers.  *See id*. (citing  *Barton v. Pret A Manger (USA) Ltd*., 535 F. Supp. 3d 225, 237 (S.D.N.Y. 2021)).

        In a similar vein, a claim for breach of express warranty requires an allegation that defendants failed to deliver on a promise that goods conform to the affirmation or promise.  N.Y. U.C.C. Law § 2-313 (McKinney); Ind. Code Ann. § 26-1-2-313 (West); 6A R.I. Gen. Laws Ann. § 6A-2-313 (West); Mass. Gen. Laws Ann. ch. 106, § 2-313 (West); Md. Code Ann., Com. Law § 2-313 (West).  Under the New York Uniform Commercial Code, any affirmation of fact or promise made by the seller to the buyer which relates to the goods creates an express warranty that the goods conform to the description.  *Singleton v. Fifth Generation, Inc*., No. 515 CV 474 BKS TWD, 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016)(citing N.Y. U.C.C. Law § 2–313(1)(a), (b)).  However, as with claims brought under the consumer protection statutes, "[g]eneralized statements by the defendant . . . do not support an express warranty claim if they are 'such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.'" *Colpitts v. Blue Diamond Growers,* 527 F. Supp. 3d 562, 589 (S.D.N.Y. 2021) (citing *Silva v. Smucker Nat. Foods, Inc*., No. 14-CV-6154 JG RML, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015)).

        Finally, to state a claim for common law fraud, a plaintiff must show that: "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the

9

plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." *Warren v. Coca-Cola Co*., 670 F. Supp. 3d 72, 86–87 (S.D.N.Y. 2023).  In all of these cases, the reasonable consumer analysis must focus on the precise representations made on the packaging, as well as the context and specificity of those representations.  *Vazquez* 2023 WL 8257999, at *2 (citing *Mantikas v. Kellogg Co*., 910 F.3d 633, 636 (2d Cir. 2018)).

In this matter, the plaintiffs allege that any reasonable consumer would have been led to believe that the Products contained all of the B Vitamins given the defendants' use of the word "Complete" on the front of the bottle, coupled with the unqualified words "B Vitamins." The defendants counter that their use of the word "Complete" was mere puffing.  *See MacNaughton*, 67 F.4th 89 at 96 (A frequent defense asserted against allegations of materially misleading statements on products is that the underlying statements are "mere puffery," which cannot form the basis of such a claim).

There are two types of puffery: "(1) subjective statements that cannot be proven true or false and are therefore non-actionable puffery as a matter of law and (2) objective statements that can be proven true or false but are so exaggerated that no reasonable buyer could justifiably rely on them." *Id*.  The defendants' arguments are based on the first type of puffery.  This type of puffery "often manifests as 'exaggeration[s] or overstatement[s]' that mention 'nothing specific,' but rather amount to 'general claim[s] of superiority' 'expressed in broad, vague, and commendatory language' that are 'considered to be offered and understood as an expression of the seller's opinion only.'" *Id* (citing *Int'l Code Council, Inc. v. UpCodes Inc*., 43 F.4th 46, 59-60 (2d Cir. 2022)).  For example. "[t]he 'subjectivity' factor applies when the disputed statements may not be measured on an objective basis, such as by reference to clinical studies or

comparison with the product's competitors." *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 393 (E.D.N.Y. 2013) (citing *Time War. See Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)).

As the defendants point out, a number of courts have found the term "complete" to be non-actionable puffery. *Int'l Code Council, Inc.* 43 F.4th at 63 (a claim that a website "provides a complete understanding of relevant material" is immeasurable, subjective, nonactionable puffery); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) (the meaning of the term "complete" in relation to a sports drink is open to interpretation). However, the use of the word "complete" in this case is arguably different because the plaintiffs could prove whether the Products contain all of the vitamins and essential nutrients recommended by the FDA. In other words, the term "complete" in this context could be measured. Indeed, at least one court has already found that the word "complete" in connection with children's multivitamin supplement labels could give rise to a reasonable inference or belief that the product contains "all" vitamins, or at least "all" vitamins considered essential by the FDA. *See Cabrera v. Bayer Healthcare*, LLC, No. LA CV 1708525 JAK JPRx, 2019 WL 1146828, at *10 (C.D. Cal. Mar. 6, 2019). Accordingly, without a fact intensive inquiry, the Court cannot dismiss the claims based on the defendants' puffery argument.

Moreover, the Court finds little merit in the defendants' argument that the labels were not misleading because any consumer who simply rotated the bottle could have seen exactly which B Vitamins were included in the Products. The Second Circuit has held:

> "[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." "Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." We conclude that a reasonable consumer should not

11

> be expected to consult the Nutrition Facts panel on the side of the box to correct
> misleading information set forth in large bold type on the front of the box.

*Campbell,* 516 F. Supp. 3d at 382.  Consequently, while the plaintiffs may not ultimately be

successful in establishing that a reasonable consumer would have been misled by the term

"Complete, the Court cannot recommend dismissal of the consumer protection, fraud, and

warranty claims at this stage in the litigation based on the defendants' argument that their labels

did not contain any misleading statements.

### C.      Rule 9(b)

There is merit, however, to the defendants' argument that the plaintiffs' fraud, intentional

misrepresentation and negligent misrepresentation claims, as well as several of the state

consumer protection claims, should be dismissed because the claims lack specificity with respect

to the individual corporate defendants.  Specifically, the defendants contend that the plaintiffs'

allegations are flawed because they "lump" Rexall, NatureSmart, and Bountiful together as

"Defendants," without identifying which of the defendants are actually responsible for the

alleged misleading packaging.

It is well-settled that claims based on fraudulent misrepresentations are subject to the

heightened pleading standard found in Fed. R. Civ. P. 9(b).  See *F.D.I.C. v. U.S. Mortg. Corp.,*

132 F. Supp. 3d 369, 378–79 (E.D.N.Y. 2015) (fraud); *Pilkington N. Am., Inc. v. Mitsui*

*Sumitomo Ins. Co. of Am*., 420 F. Supp. 3d 123, 141 (S.D.N.Y. 2019) (citing *Assoun v. Assoun*,

No. 14-cv-1368 (PAC), 2015 WL 110106, at *5 (S.D.N.Y. Jan. 7, 2015) ("[Plaintiff] alleges a

claim for intentional misrepresentation, which, under New York law, is identical to a claim for

fraud.") (collecting cases); *Silvercreek Mgmt., Inc. v. Citigroup, Inc*., 248 F. Supp. 3d 428, 453

(S.D.N.Y. 2017) (Second Circuit authority makes clear that a claim for negligent

misrepresentation under New York law must be pled in accordance with the specificity criteria of

Rule 9(b)).  "In particular, a party asserting fraud 'must state with particularity the circumstances constituting fraud or mistake.'"  *See F.D.I.C. v. U.S. Mortg. Corp.,* 132 F. Supp. 3d at 378–79 (citing Fed. R. Civ. P. 9(b)).  Indeed, "Rule 9(b) is [only] satisfied when the complaint specifies 'the time, place, speaker, and content of the alleged misrepresentations;' how the misrepresentations were fraudulent; and the details that 'give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Id.* (quoting *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014)).  While there is a recognized exception to this rule when the facts are peculiarly within the opposing party's knowledge, *see Rahl v. Bande,* 328 B.R. 387, 415–16 (S.D.N.Y. 2005), "[t]hat [exception] is not a license to make purely speculative allegations with no factual foundation." *Apace Commc'ns, Ltd. v. Burke,* 522 F. Supp. 2d 509, 518 (W.D.N.Y. 2007) (citing *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179–80 (2d Cir. 2004)).  Indeed, the plaintiffs must still point to some specific facts that form their basis of belief that the defendants are all liable.

Pleading with particularity is also required to assert claims under most of the state consumer protection laws at issue in this case.  *See e.g. Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (Maryland Consumer Protection Act claims sounding in fraud required pleading with particularity); *O'Hara v. Diageo-Guinness, USA, Inc*., 306 F. Supp. 3d 441, 462 (D. Mass. 2018), on reconsideration, 370 F. Supp. 3d 204 (D. Mass. 2019) (applying Rule 9(b) to claims brought pursuant to Mass. Gen. Laws Chapter 93A); *Armstrong v. Deere & Co.,* No. 16-cv-844, 2017 WL 4168485, at *4 (S.D. Ind. Sept. 20, 2017) (dismissing claims because plaintiff failed to adequately allege consumer fraud under Indiana law).  Notably, however, in New York, "[c]laims under GBL §§ 349 [and] 350 are 'not subject to the pleading-

with-particularity requirements of Rule 9(b).' . . . They 'need only meet the bare-bones notice-pleading requirements of Rule 8(a).'" *Colpitts v. Blue Diamond Growers,* 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (citing *Manchanda v. Navient Student Loans,* No. 19 Civ. 5121 (WHP), 2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020)).

Here, the plaintiffs broadly allege that the defendants – Rexall, NatureSmart and Bountiful and/or their agents - are formulating, manufacturing, labeling, marketing and selling the Products as "Complete Multivitamin Gummies," containing the "B Vitamins" and "13 Essential Nutrients." Compl. ¶¶ 2, 23-25, 30-31, 33, 37, 39, 41-42, 46.  But, the plaintiffs have pled little, if any, facts in support of that general allegation.  At best, the plaintiffs have identified Rexall as a wholly owned subsidiary of Bountiful.  *See id.* ¶ 23.  However, the complaint contains no substantive information as to the basis of the plaintiffs' belief that all three companies are tied to the manufacturing, labeling and advertisement of the Products.[4] Accordingly, the undersigned respectfully recommends that Counts I to IV, VIII, IX and X be dismissed.

### D.    Breach of Implied Warranty

The defendants next seek to dismiss the breach of implied warranty claim on the ground that the plaintiffs have not plausibly alleged that the Products are "unmerchantable." Specifically, they contend that their Products were "fit for the ordinary purpose" of being dietary supplements.  "Implied warranties include the implied warranty of merchantability and the

---

[4] It warrants mention that the plaintiffs' reliance on *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 172 (2d Cir. 2015), is misplaced.  In that case, the plaintiffs had identified three Wachovia entities who acted together to structure and offer the securities in question : (1) Wachovia Capital Markets, LLC, as the initial purchaser of the notes issued by all three CDOs; (2) Wachovia Securities International Limited, as this initial purchaser's agent for the sale of the Sagittarius and Longshore notes; and (3) Wachovia Bank, N.A. as the initial CDS counterparty for the three CDOs, their warehouse financing provider, and the liquidity provider for Octans and Sagittarius. There is no indication in the instant complaint what, if any, role the defendants had in the preparation of the labeling or the marketing of the product.

implied warranty of fitness for a particular purpose." *Jackson v. Eddy's LI RV Ctr., Inc.,* 845 F. Supp. 2d 523, 530–31 (E.D.N.Y. 2012).  In New York, and in the other states at issue, any implied warranty of merchantability is governed by Section 2–314 of the Uniform Commercial Code ("UCC"), which provides, "'a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.'" *Id.* (citing N.Y.U.C.C. § 2–314(1)).[5]  To be merchantable, products must, among other things, be fit for the ordinary purposes for which such goods are used and must conform to the promises or affirmations of fact made on the container or label.  N.Y. U.C.C. Law § 2-314 (McKinney).  The defendants arguments address the first criteria, that being, that a product must be fit for "the ordinary purposes" for which such goods are used.  See *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 420–21 (S.D.N.Y. 2011) (citing New York U.C.C. § 2–314(2)(c)).[6]  However, the plaintiffs have clarified in their memorandum that they did not intend to bring a claim under N.Y. U.C.C. §2-314(2)(c) (fit for ordinary purposes).  Rather, they only intended to

---

[5] *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 225 (4th Cir. 2009) (Under Maryland Code, Commercial Law, § 2-314, "a warranty of merchantability is implied in the sale of goods by a merchant who deals in goods of that kind. To be merchantable, goods must "[p]ass without objection in the trade under the contract description. . ..."); *Rule v. Fort Dodge Animal Health, Inc.,* 604 F. Supp. 2d 288, 294 (D. Mass. 2009) (similar), aff'd, 607 F.3d 250 (1st Cir. 2010) (citing Mass. Gen. Laws ch. 106, § 2–314(1) ("Under Massachusetts law, 'a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.'"); *Newland N. Am. Foods, Inc. v. Zentis N. Am. Operating, LLC*, No. 2:13-CV-074, 2013 WL 1870652, at *2 (N.D. Ind. May 3, 2013) ("Ind. Code § 26–1–2–314 states that in order for goods to be merchantable they must be 'fit for the ordinary purposes for which such goods are used.'"); *Kline v. Passport Yachts E., Inc*., 1988 WL 1017077, at *1 (R.I. Super. Ct. Feb. 4, 1988) (Under R.I.G.L.1956 § 6A-2-314, as amended, plaintiffs were entitled to a boat of merchantable quality, i.e., fit for the ordinary purposes for which it was to be used).

[6] The defendants have relied on a number of cases involving beverages to support their arguments in this regard. "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG), 2010 WL 2925955, at *25 (E.D.N.Y. July 21, 2010) (dismissing New York breach of implied warranty of merchantability claim for failure to establish beverage was not "merchantable" in that it did not meet "a minimum level of quality")). Those cases are inapplicable.  The Court also finds the defendants' interpretation of *Hammer v. Vital Pharms., Inc*., No. CIV.A. 11-4124, 2012 WL 1018842, at *12 (D.N.J. Mar. 26, 2012), flawed.  In *Hammer,* the court's determination rested entirely on the fact that the plaintiffs had failed to allege that the addition of components other than dietary ingredients was somehow unsafe.  The holding does not stand for the proposition suggested by the defendants, that being, that a dietary supplement can only be deemed unmerchantable if it is somehow unsafe.

bring an implied warranty claim under U.C.C. §2-314(2)(f), which, as indicated above, provides that to be merchantable, goods must conform to the promises or affirmations of fact made on the container or label.  N.Y. U.C.C. Law § 2-314 (McKinney); *see Mahoney v. Endo Health Solutions, Inc.,* 2016 WL 3951185, at *4 (S.D.N.Y. July 20, 2016) ("Goods are merchantable if they . . . conform to the promises or affirmations of fact made on the container or label.").  This clarification is important because in cases where the implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises on the packaging of the product, the implied warranty of merchantability claim rises and falls with the express warranty claims brought for the same product." *Hesse v. Godiva Chocolatier, Inc*., 463 F. Supp. 3d 453, 470 (S.D.N.Y. 2020).  Accordingly, for the reasons previously stated in Section B of this report, the undersigned does not believe the implied warranty of merchantability claim can be determined at the motion-to-dismiss stage.

Nevertheless, there is merit to the defendants' argument that the breach of implied warranty claim should be dismissed to the extent the plaintiffs are also trying to claim breach of the implied warranty of fitness for a particular purpose.  "An implied warranty of fitness is created 'when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge.'" *Tears v. Bos. Sci. Corp*., 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018) (citing *Catalano v. BMW of North America*, LLC, 167 F.Supp.3d 540, 558 (S.D.N.Y 2016) (quoting *Abraham v. Volkswagen of America, Inc*., 795 F.2d 238, 249 (2d Cir. 1986)).  However, "[i]f 'the particular purpose for which goods are to be used coincides with their general function use, [the] implied warranty of fitness for a particular purpose merges with the implied warranty of merchantability.'" *Id*. (citing *APS Technology Inc. v. Brant Oilfield Management & Sales Inc*.,

No. 13-cv-6500(LTS), 2015 WL 5707161 (S.D.N.Y. 2014) at *7).  The Court sees nothing in the complaint to distinguish the plaintiff's warranty of fitness claim from their warranty of merchantability claim.  Accordingly, the Court finds that the breach of implied warranty of fitness for a particular purpose cannot stand alone in this case, and thus, respectfully recommends that it be dismissed.[7]

### E.    Unjust Enrichment

The defendants also seek to dismiss the unjust enrichment claim as duplicative of the fraud and consumer deception claims asserted by the plaintiffs.  Generally, to state a claim for unjust enrichment, a plaintiff must plead that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendant to make restitution.  *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E .D.N.Y. 2013) (applying New York law).  Under New York law, a plaintiff may plead unjust enrichment as an alternative theory, but only when there is no allegation that there is a valid contract or allegation that the defendants committed a recognized tort.  *See e.g. Lee v. Canada Goose US, Inc.*, No. 20 CIV. 9809 (VM), 2021 WL 2665955, at *9 (S.D.N.Y. June 29, 2021) (Since the plaintiffs have alleged that an express warranty governs, the unjust enrichment claim is unavailable).  The question of whether an adequate remedy of law precludes a claim for

---

[7] Both parties have chosen to mention that some states require that there be privity to maintain breach of implied warranty claim in their footnotes.  For example, "[u]nder New York law, a plaintiff must allege privity with the defendant for a claim of breach of an implied warranty of merchantability" where the only loss alleged is economic. *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 591 (S.D.N.Y. 2021) (citing *Sarr v. BEF Foods, Inc.*, No. 18 CV 6409 ARR RLM, 2020 WL 729883, at *8 (E.D.N.Y. Feb. 13, 2020)).  In contrast, privity is not necessarily required in Massachusetts, Maryland, Indiana, and Rhode Island where the plaintiffs made their purchases. Pls.' Mem. at 20, n.7.  In any case, the undersigned will not address the privity issue in this brief as the parties gave short shrift to the argument.

unjust enrichment under Rhode Island, Massachusetts, Maryland and Indiana law is a more difficult issue for this court as the case law in those states tends to point in both directions. However, since several courts in those states have permitted parties to proceed to trial with alternate claims for breach of contract and unjust enrichment, the court does not recommend that the equitable claim be dismissed at the pleading stage. *See Hasbro, Inc. v. Mikohn Gaming Corp.*, No. Civ. A. 05–106 S, 2006 WL 2035501, at *8 (D.R.I. July 18, 2006) (recognizing that the "Rhode Island Supreme Court has approved of parties proceeding to trial with alternate claims for breach of contract and unjust enrichment); *Shea v. Gen. Motors LLC,* 567 F. Supp. 3d 1011, 1024–25 (N.D. Ind. 2021)(finding that the unjust enrichment claim only became superfluous because the defendant did not dispute the existence of the warranty); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 766 (D. Md. 2012) (plaintiffs may plead claims for both legal and equitable relief, as equitable relief may become available if no adequate legal remedy remains); *Doe v. Tenet Healthcare Corp.,* No. CV 23-12978-PBS, 2024 WL 1756075, at *5 (D. Mass. Apr. 23, 2024) ("[a]lthough damages for breach of contract and unjust enrichment are mutually exclusive," a plaintiff may plead them in the alternative); *C.f..Tomasella v. Nestle USA, Inc.,* 962 F.3d 60, 83 (1st Cir. 2020) (citing *Fernándes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (holding claim of unjust enrichment was not available to plaintiff who asserted claims for  negligence and under Chapter 93A).

In addition, the Court does not find merit in the defendants' argument that the unjust enrichment claim should be dismissed because the plaintiffs cannot plausibly allege that the defendants gained an unjust benefit.  This argument goes to the core of the underlying allegations, a determination of which cannot be made at the pleading stage.  Accordingly, the

undersigned respectfully recommends that the defendants' motion to dismiss the unjust

enrichment claims be dismissed.

### F.   Injunctive Relief

Lastly, the defendants argue that the plaintiffs lack standing to seek injunctive relief

because they do not allege any risk of ongoing harm.[8]   To establish standing in a federal court, a

party must meet the minimum requirements imposed by Article III of the Constitution by

alleging an actual case or controversy.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424, 141

S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021).  To be exact, "[s]tanding requires a showing of ʻ(1)

an ʻinjury in fact,' (2) a sufficient ʻcausal connection between the injury and the conduct

complained of,' and (3) a ʻlikelihood' that the injury will be redressed by a favorable decision.'"

*Belfiore v. Procter & Gamble Co.,* 94 F. Supp. 3d 440, 444 (E.D.N.Y. 2015) (citing *Susan B.*

*Anthony List v. Driehaus, 5*73 U.S. 149, 157, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014)).

"Although past injuries may provide a basis for standing to seek money damages, they do not

confer standing to seek injunctive relief unless the plaintiff can demonstrate that [the plaintiff] is

likely to be harmed again in the future in a similar way."  *Nicosia v. Amazon.com, Inc.,* 834 F.3d

220, 239 (2d Cir. 2016) (citing *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344–45

(2d Cir. 1998)) (plaintiff failed to show that he was likely to be subjected to further sales of

products containing sibutramine because Amazon had ceased selling 1 Day Diet on its website

and plaintiff failed to allege that he intended to use Amazon in the future to buy any products).

Indeed, "[i]n the context of prospective injunctive relief, the Supreme Court and the Second

Circuit have concluded that a plaintiff lacks standing to pursue injunctive relief if [the] plaintiff

---

[8] Generally, courts consider Rule 12(b)(1) challenges first since defenses and objections become moot if a case is dismissed for lack of subject matter jurisdiction.  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).  However, in this case, the Rule 12(b)(1) argument is only raised in connection with the request for injunctive relief.

does not establish a "real or immediate threat" of injury, rather than allegations of future harm that are merely 'speculative.'" *Pres. at Connetquot Homeowners Ass'n, Inc. v. Costco Wholesale Corp.*, No. 17 CV 7050 JFB AYS, 2019 WL 337093, at *4 (E.D.N.Y. Jan. 28, 2019) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1982) and *Nicosia*, 834 F.3d at 239).

In this case, the plaintiffs have not sufficiently alleged that they will be harmed in the future.  At best, the plaintiffs indicate a desire to purchase the defendants' Products in the future "but only if the Products contain vitamins B1, B2, and B3, or . . . have accurate labels that indicate that they do not contain those B vitamins."  This allegation is highly questionable especially to the extent the plaintiffs seem to suggest that they would consider purchasing the Products if they were labeled correctly.   Throughout the complaint, the plaintiffs assert that they purchased the Products relying on the fact that they "contained the 13 vitamins recognized by entities such as the FDA and NIH." *See e.g.* Compl. ¶ 13.  Arguably, altering the label without adding those vitamins would not make the Product more appealing to the plaintiffs.  In fact, according to the allegations in the complaint, in 2020, the defendants did modify their labels, *see* Compl. ¶ 41, but there is no indication the plaintiffs bought the Products after they did so.  *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (past purchasers of a consumer product who claim to be deceived by that product's packaging have, at most, alleged a past harm - once they become aware they have been deceived, that will often be the last time they will buy that item).  Accordingly, these allegations are insufficient to allege future injury, and thus, the undersigned respectfully recommends that the plaintiffs be barred from seeking injunctive relief.

## OBJECTIONS

A copy of this Report and Recommendation is being served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court

with a courtesy copy to the undersigned within 14 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
      August 26, 2024

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge